UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAWRENCE GEORGE HASH,<br><br>Petitioner,<br><br>v.<br><br>KELLY SANTORO, Warden,<br><br>Respondent. | Case No. 19-cv-00783-YGR (PR)<br><br>**ORDER GRANTING RESPONDENT'S MOTION TO DISMISS; AND DENYING CERTIFICATE OF APPEALABILITY** |

Petitioner, a state prisoner currently incarcerated at North Kern State Prison ("NKSP"), has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging the constitutionality of disciplinary proceedings against him. The Court issued an order to show cause on April 4, 2019.

Before the Court is Respondent's motion to dismiss the instant petition on the grounds that that the claim does not state a cognizable basis for federal habeas relief. Dkt. 16. Specifically, Respondent argues that habeas corpus is not the proper remedy for Petitioner's claim because he has not shown that success in this action will necessarily accelerate his release from prison. Petitioner has filed an opposition to the motion, and Respondent has filed a reply. Dkts. 17, 18. Finally, Petitioner filed an unsolicited surreply to Respondent's motion for to dismiss, and he seeks leave to file the same. Dkt. 19. The Court GRANTS Petitioner's request for leave to file a surreply. Dkt. 19.

Having considered all of the papers filed by the parties, the Court GRANTS Respondent's motion to dismiss the petition.

I. **BACKGROUND**

In 1998, Petitioner was sentenced to an indeterminate sentence of twenty-nine years to life with the possibility of parole. Dkt. 16, Ex. 1. His minimum eligible parole date ("MEPD") was in October 2019. Dkt. 18, Exs. 1, 2. In this petition, Petitioner challenges prison disciplinary proceedings at San Quentin State Prison which resulted in a guilty finding for criminal threats. Dkt. 17 at 4-5, Ex. 4 at 7-8. Petitioner was assessed 150 days of credit loss. *Id.*

Petitioner filed the instant federal habeas petition on February 13, 2019. Dkt. 1. Petitioner contends that his due process rights were violated during the disciplinary proceedings, including the failure to provide proper "notice" of the alleged misbehavior and also based on the prison officials' improper use of inmate "confidential information." Dkt. 1-1 at 14.

## II. DISCUSSION

Respondent argues that the petition must be dismissed as Petitioner's due process claims do not properly invoke federal habeas corpus jurisdiction. *See* Dkt. 16. Respondent asserts that Petitioner's claims do not establish habeas jurisdiction because a successful challenge, i.e., the expungement of the disciplinary finding at issue, will not result in Petitioner's release or otherwise shorten his confinement. *Id.* In opposition, Petitioner argues that habeas jurisdiction is proper because he seeks reversal of the guilty finding, restoration of the 150 days of behavior credits, and a decrease in his classification point score due to the rule violation, which caused his level of custody to increase to a "level IV, 180 [degree] design high security prison housing facility at Pelican Bay State Prison." *See* Dkt. 17 at 3-5. Specifically, Petitioner, who is 62 years old, argues that he "may be eligible for parole even sooner that his upcoming April 2020 parole hearing due to programs for earning good conduct and other credits" under the "Elderly Parole Program codified by legislature." *Id.* at 3 (citing Cal. Penal Code § 3055[1]). It seems that Petitioner claims that these "custody credits" can advance the date of his initial parole consideration hearing under various regulations for "good conduct," "milestone completion," "rehabilitation," and "education merit." *Id.* Thus, he claims that a restoration of such credits would advance his parole hearing. *Id.* at 3-4. Petitioner also claims that "success on the merits of [his] habeas claim would include what could fairly be described as 'a quantum change in the level of his custody' meaning from a level IV, 180 degree [Security Housing Unit ("SHU")] Facility to a level II general population facility where he was housed at the time of the rule violation now at issue." *Id.* at 5.

"'Federal law opens two main avenues to relief on complaints related to imprisonment: a

---

[1] The Elderly Parole Program was established, to be administered by the Board of Parole Hearing, for purposes of reviewing the parole suitability of any inmate who is 60 years of age or older and has served a minimum of 25 years of continuous incarceration on his or her current sentence, serving either a determinate or indeterminate sentence. Cal. Penal Code § 3055(a).

2

petition for habeas corpus, 28 U.S.C. § 2254, and a complaint under the Civil Rights Act of 1871, Rev. Stat. § 1979, *as amended*, 42 U.S.C. § 1983. Challenges to the validity of any confinement or to particulars affecting its duration are the province of habeas corpus.'" *Hill v. McDonough*, 547 U.S. 573, 579 (2006) (quoting *Muhammad v. Close*, 540 U.S. 749, 750 (2004)). "An inmate's challenge to the circumstances of his confinement, however, may be brought under [section] 1983." *Id.*

The Supreme Court has consistently held that any claim by a prisoner attacking the fact or duration of his confinement must be brought under the habeas sections of Title 28 of the United States Code. *See Calderon v. Ashmus*, 523 U.S. 740, 747 (1998); *Edwards v. Balisok*, 520 U.S. 641, 648 (1997); *Preiser v. Rodriguez,* 411 U.S. 475, 500 (1973). A claim that would necessarily imply the invalidity of a prisoner's conviction or continuing confinement must be brought in a habeas petition. *See id.*

Habeas is the "exclusive remedy" for the prisoner who seeks "'immediate or speedier release'" from confinement. *Skinner v. Switzer*, 562 U.S. 521, 525, 533-34 (2011) (quoting *Wilkinson v. Dotson*, 544 U.S. 74, 82 (2005)[2]). "Where the prisoner's claim would not 'necessarily spell speedier release,' however, suit may be brought under [section] 1983.'" *Id.* In fact, a section 1983 action is the exclusive remedy for claims by state prisoners that do not lie at the "'core of habeas corpus.'" *Nettles*, 830 F.3d at 931 (quoting *Preiser*, 411 U.S. at 487). The Supreme Court has declined to address whether a challenge to a condition of confinement may be brought under habeas. *See Bell v. Wolfish*, 441 U.S. 520, 526 n.6 (1979); *Fierro v. Gomez*, 77 F.3d 301, 304 n.2 (9th Cir.), *vacated on other grounds*, 519 U.S. 918 (1996). However, the Ninth Circuit has held that "habeas jurisdiction is absent, and a [section] 1983 action proper, where a

---

[2] In *Wilkinson v. Dotson*, the Supreme Court held that prisoners' parole claims seeking a new parole hearing were cognizable under section 1983 because the relief sought would not necessarily "invalidate the duration of their confinement—either directly through an injunction compelling speedier release or indirectly through a judicial determination that necessarily implies the unlawfulness of the State's custody." 544 U.S. 74, 79-82 (2005) (finding that where an inmate challenges the constitutional validity of the state parole eligibility, but seeks injunctive relief in the form of an earlier eligibility review or parole hearing rather than earlier release, the claim is cognizable under section 1983); *see also Neal v. Shimoda*, 131 F.3d 818, 824 (9th Cir. 1997) (if prisoner wins and is entitled to parole eligibility hearing, this does not guarantee parole or necessarily shorten his prison sentence).

3

successful challenge to a prison condition will not necessarily shorten the prisoner's sentence." *Ramirez v. Galaza*, 334 F.3d 850, 859 (9th Cir. 2003).

Here, Respondent argues that a successful challenge to the disciplinary finding would not affect the fact or length of Petitioner's incarceration. This Court agrees. Habeas is not the proper avenue of relief for Petitioner's claim. Petitioner is serving an indeterminate life sentence and his MEPD has passed. In this situation, losing time credits or "custody credits" would not push back Petitioner's release date or the date of his parole eligibility. If Petitioner were serving a determinate sentence, his claim would be cognizable in habeas because the loss of credits would have pushed back his release date, and success on his claim would necessarily shorten his time in custody. Or, if Petitioner had not yet reached his MEPD, such a claim might be cognizable in habeas because loss of time credits would push back the first date he would be eligible for parole and possibly obtain a release date. Therefore, success on his claim would not "necessarily shorten" his sentence, *see id.*, and habeas jurisdiction is absent.

As mentioned above, Petitioner argues that "custody credits" will advance his elderly parole hearing eligibility date.[3] Dkt. 17 at 304. However, Respondent argues that "[e]ven so, the advancement of his initial parole consideration hearing, scheduled for April 2020, 'would not necessarily lead to immediate or speedier release because the expungement of the challenged disciplinary violation would not necessarily lead to a grant of parole.'" Dkt. 18 at 1-2 (citing *Nettles*, 830 F.3d at 934-35 (2016) (holding federal habeas relief is only available for claims, that if successful, will "necessarily lead to [the inmate's] immediate or earlier release from confinement")). Petitioner argues in his opposition that Respondent cannot rely on *Nettles v. Grounds* because it is ex post facto law increasing the punishment for his rule violation that occurred "sometime between February 2015 and March of 2016," which was before *Nettles* was decided in July 2016. Dkt. 17 at 4. However, *Nettles* is not an ex post facto law because it is judicially created authority, and does not increase the punishment for Petitioner's crime. *See Garner v. Jones*, 529 U.S. 244, 250-51 (2000) (holding that to be ex post facto, the law must be

---

[3] The term "elderly parole eligible date" means the date on which an inmate who qualifies as an elderly offender is eligible for release from prison. Cal. Penal Code § 3055(b).

4

retroactive and must increase the punishment for a crime after its commission). Any change to the length of Petitioner's confinement from the rule of *Nettles* is too "speculative and attenuated" to give rise to an ex post facto violation. *See California Dep't of Corr. v. Morales*, 514 U.S. 499, 507-09 (1995) (A law that does not increase the punishment imposed upon an inmate for a criminal offense previously committed cannot violate the Ex Post Facto Clause even when applied retrospectively.). Thus, the Court disagrees with Petitioner and finds that Respondent did not err in relying on *Nettles*. Because Petitioner fails to explain how restoration of credits would advance his elderly parole hearing eligibility date, or how such an advancement would necessarily lead to a grant of parole, the Court finds that federal habeas jurisdiction is lacking.

Next, the Court considers Petitioner's argument that the challenged disciplinary proceedings resulted in his confinement in segregated housing in the SHU increased his classification score, and resulted in his elevation to a high security facility at Pelican Bay State Prison. *See* Dkt. 17 at 4-5. Petitioner contends his success on the merits would result in a reduction in his custody level from SHU to a general population facility. *Id.* (citing *Skinner v. Switzer*, 562 U.S. 521, 534 (2011) (defining speedier release as only termination of custody, acceleration of the future release date from custody, or a reduction in the level of custody) (quoting *Wilkinson v. Dotson*, 544 U.S. 74, 86 (2005)). However, in the reply, Respondent points out that according to Petitioner's "Inmate Information" in the CDCR's Inmate Locator, Petitioner is no longer confined at the SHU, or at a high security facility. *See* Dkt. 18, Ex. 2. According to the "Classification Committee Chrono" that Petitioner has attached to his Opposition, his "classification score ha[d] also been corrected (reduced by 4 classification points) to reflect a dismissed RVR." Dkt. 17 at 9. And that, as of March 2, 2017, Petitioner "still ha[d] level IV points which makes his placement at [San Quentin State Prison] inappropriate." *Id.* And Respondent points out that it appears that Petitioner received a further classification points reduction because he is now currently housed at NKSP, a medium security facility. Dkt. 18, Exs. 2 & 3. Therefore, Respondent argues that because Petitioner is no longer confined in segregated housing such as the SHU, or at a high security facility, his claim that the expungement of the challenged disciplinary proceedings would reduce his custody level from a high security to general

5

population facility appears moot. Dkt. 18 at 3 (citing *Spencer v. Kemna*, 523 U.S. 1, 7 (1998) (holding a case becomes moot when "it no longer present[s] a case or controversy under Article III, § 2, of the Constitution"); *Picrin-Peron v. Rison*, 930 F.2d 773, 775 (9th Cir. 1991) ("If it appears that we are without power to grant the relief requested, then this case is moot.")). Finally, Respondent points out that Petitioner also went through disciplinary proceedings for possession of a weapon in May 2016, which resulted in credit losses and a SHU term, *before* he received the disciplinary finding related to criminal threats disputed here. Dkt. 18 at 3 (citing Dkt. 17 at 4-5), Ex. 4 at 7, 8. Thus, Respondent argues that Petitioner's claim that the expungement of the challenged disciplinary proceedings would reduce his custody level is speculative. *Id.* at 3 (citing *Nettles*, 830 F.3d at 934 (rejecting previous definition of habeas corpus jurisdiction permitting probabilistic claims)). Meanwhile, in his surreply, Petitioner argues that he "is still seeking a further reduction in his level of custody, i.e., a level II prison, therefore this is not a moot issue." Dkt. 19 at 5. However, Petitioner also concedes in his surreply that "[w]hile he was housed at said high security/high custody prison [he] remaining disciplinary free, resulting in his lower classification score and a transfer to [NKSP], which is a level III prison." *Id.* Thus, the Court finds that various factors could lead to a reduced level of custody, including Petitioner remaining disciplinary free. Thus, while the Court need not decide whether the issue is moot, it agrees with Respondent that Petitioner's claim that the expungement of the challenged disciplinary proceedings would reduce his custody level is *speculative*. Even if this Court were to vacate Petitioner's disciplinary violation, he might still be denied a reduction in his level of custody on other grounds, and, in any event, it would still be true that success on his claim would not "necessarily shorten" his sentence. *See Ramirez*, 334 F.3d at 859.

In sum, because Petitioner's success on the merits will not necessarily shorten the duration of his confinement, nor result in a reduced level of custody, he fails to establish grounds for federal habeas corpus jurisdiction. Thus, Petitioner's challenge is more properly brought under section 1983, rather than in habeas. *Ramirez*, 334 F.3d at 859. Accordingly, Respondent's motion to dismiss is GRANTED (dkt. 16), and the petition is DISMISSED for lack of jurisdiction. This dismissal is without prejudice to Petitioner bringing his due process claims in a civil rights action.

6

### III. CONCLUSION

For the foregoing reasons,

1. The Court GRANTS Petitioner's request for leave to file a surreply. Dkt. 19.

2. The Court GRANTS Respondent's motion to dismiss the petition. Dkt. 16. The petition is DISMISSED for lack of jurisdiction and it is not appropriate for federal habeas corpus review. This dismissal is without prejudice to Petitioner bringing his due process claims in a section 1983 action.

3. Further, a certificate of appealability is DENIED. Petitioner has not shown "that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Petitioner may seek a certificate of appealability from the Ninth Circuit Court of Appeals.

4. The Clerk of the Court shall terminate all pending motions, enter judgment and close the file.

5. The Clerk shall also send Petitioner a blank civil rights complaint form with his copy of this Order.

6. This Order terminates Docket Nos. 16 and 19.

IT IS SO ORDERED.

Dated: March 3, 2020

_____
YVONNE GONZALEZ ROGERS
United States District Judge